IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ZURICH AMERICAN INSURANCE )
COMPANY, )
 )
    Plaintiff, )
 )
v. ) Civil Action No. 1:19-cv-319
 )
GRADY GARRETT BECK, )
 )
    Defendant. )
 )

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on the parties' Cross-Motions for Summary Judgment (Dkts. 7 & 11)[1] pursuant to Federal Rule of Civil Procedure 56.

Zurich American Insurance Company, Plaintiff, brings this suit in order to receive a declaratory judgment that Grady Beck, Defendant, is not covered by an underinsured motorist policy (the "Zurich Policy") held by Defendant's employer, the Potomac Family Dining Group ("Potomac Family") for an accident which occurred on June 7, 2017.

Defendant was a district manager employed by Potomac Family and frequently drove as part of his job. At the time of the

---

[1] Plaintiff's motion was one for judgment on the pleadings under Fed. R. Civ. P. 12(c). The Court construes it as a motion for summary judgment as the same standards of review are used and documents outside the pleadings will be considered for purposes of this motion. Id.

accident, Defendant was driving a 2010 Toyota Prius that was owned by and registered to himself. Defendant's vehicle was not listed in any schedule of the Zurich Policy. Defendant's vehicle was allegedly struck by a third party causing the accident. Defendant has since filed suit against this third party in state court and the complaint in that case has an ad damnum clause of $1,500,000.00.

The parties believe that Defendant is likely to attempt to file a claim under the Zurich Policy as the third party who allegedly caused the accident only had liability coverage for $100,000.00 and Defendant has uninsured/underinsured motorist coverage up to $250,000.00. The two policies combined would leave a significant shortfall in Defendant's claimed damages. The Zurich Policy has liability coverage and uninsured/underinsured coverage with limits of $1,000,000.00 per person for each coverage and was in full effect as of the date of the accident.

Item Two of the Zurich Policy is the "Schedule of Coverages and Covered Autos." At the beginning of the schedule a paragraph states as follows: "This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those 'autos' shown as covered 'autos'. 'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols

from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage." (emphasis removed)

In the Schedule of Coverages, numeric symbols are used to indicate what vehicles are considered "covered autos" for each type of coverage under the Zurich Policy. The key to the symbols is found on the first page of the Business Auto Coverage Form. The key informs the reader that the symbol "1" refers to "Any 'Auto'" and the symbol "2" refers to "Owned 'Autos' Only." Owned Autos Only is described as "Only those 'autos' you own (and for Liability Coverage any 'trailers' you don't own while attached to power units you own). This include those 'autos' you acquire ownership of after the policy begins."

In the Schedule of Coverages, there is a numeric symbol of "1" next to "Liability" coverage indicating that it extends to all autos regardless of ownership. Further down, one finds that next to "Uninsured Motorists" ("UM") coverage there is a "2" indicating that the coverage applies only to owned autos, i.e. those owned by Potomac Family. In the row directly below that, there is a "2" next to "Underinsured Motorists (when not included in Uninsured Motorists Coverage)" ("UIM"), again indicating that this form of coverage only applies to owned autos. Further over in the UIM row, it says "SEE ENDT" in the column discussing the limit of coverage and "INCL" in the column discussing the premium amount.

The UM/UIM Endorsement to the Zurich Policy includes UIM coverage. At the top of the first page of the UM/UIM Endorsement a notice reads **"THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."** (emphasis in original) The UM endorsement continues on to include a definition that "'Covered auto' means a motor vehicle, or a 'temporary substitute', with respect to which the 'bodily injury' or 'property damage' liability coverage of the policy applies." The language of the UM/UIM Endorsement was drafted and mandated by the Virginia State Corporation Commission as the only language approved for uninsured motorist endorsements.

The parties have filed cross-motions for summary judgment which have been fully briefed and oral argument was heard on the matter.

Summary judgment may only be granted when there is "no genuine issue as to any material fact and that moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 644-45 (4th Cir. 2002). This review must be done without contradicting the "affirmative obligation of the trial judge to prevent factually unsupported

claims and defenses from proceeding to trial." Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted). A "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to find an issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). There must instead be evidence by which a reasonable jury could find for either side in order for summary judgment to be appropriate. Id. When reviewing cross-motions for summary judgment, a court must review each motion separately on its own merits and make a determination whether either of the parties deserves judgment as matter of law. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

The ultimate question in this case is whether the vehicle Defendant was driving at the time of the accident was a "covered auto" under the terms of the Zurich Policy and the UM/UIM Endorsement. As this Court sits in diversity jurisdiction, it must apply Virginia law to arrive at the answer. Levine v. Emplrs. Ins. Co., 887 F.3d 623, 627 (4th Cir. 2018).

Courts in Virginia apply traditional contract principles to "interpret insurance policies . . . in accordance with the intention of the parties gleaned from the words that have been used in the documents." Floyd v. Northern Neck Ins. Co., 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993). Clear and unambiguous

5

terms of the policy are to be construed according to their plain meaning. TravCo Ins. Co. v. Ward, 284 Va. 547, 554, 736 S.E.2d 321, 325 (2012). "'No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.'" Id. (quoting City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc., 271 Va. 574, 579, 628 S.E.2d 539, 541 (2006)). Exclusionary language "will be construed most strongly against the insurer." Allstate Ins. Co. v. Gauthier, 273 Va. 416, 641 S.E.2d 101, 104 (2007).

Defendant urges the Court to find that he is covered by the Zurich Policy due to the language of the UM/UIM Endorsement. Defendant heavily relies on two parts of the UM/UIM Endorsement when making this contention. First, the definition of "Covered auto" as meaning "a motor vehicle . . . with respect to which the 'bodily injury' or 'property damage' liability coverage of the policy applies." Second, the notice at the top of the endorsement which states, **"THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."**

Defendant states that the definition of covered auto directs the reader to return to the Schedule of Coverages and Covered Autos and look to the coverage for "Liability" which has a symbol "1" next to it indicating that there is general liability, i.e. "'bodily injury' or 'property damage,'" coverage

6

for all autos. Defendant contends that this is the proper reading of the policy as the notice at the beginning of the UM/UIM Endorsement alerted the reader that it changed the policy, thus the "2" next to the UIM coverage on the Schedule of Coverages may be disregarded. This result, however, is incorrect.

Such an interpretation would allow a general provision of the contract to govern a specific term. The Fourth Circuit has recently ruled in a case akin to the one at bar that specific terms should govern the interpretation of the contract over general terms. See Levine, 887 F.3d at 629-30. In Levine, the plaintiffs sought coverage under a "UIM endorsement that [had] a definition of 'covered auto' that [was] broader than the UIM limitation on the Policy's Declarations Pages." Id. at 629. The Fourth Circuit found that "Virginia follows the well-settled principle in contract law of applying specific provisions of a contract over more general provisions dealing with the same subject matter." Id. at 630 (citing Appalachian Reg'l Healthcare v. Cunningham, 294 Va. 363, 373, 806 S.E.2d 380, 385 n.9 (2017) ("When two provisions of a contract conflict with one another, and one provision specifically addresses the dispute at hand while the other remains general, we have consistently held that the specific provision will govern over the general.")).

The Virginia Supreme Court has also dealt with similar language. Beginning from the premise that contracts should be interpreted in such a way that no word is surplusage, Ward, 284 Va. at 554, the Virginia Supreme Court reviewed an UIM endorsement comparing it to the declarations page and other provisions of the policy before it. Bayer v. Travelers Indem. Co., 221 Va. 5, 267 S.E.2d 91 (1980) (per curiam). The Bayer court found that allowing the broad definition of "covered auto" in the endorsement to be controlling would swallow up the other provisions of the policy. Id. at 91 (1980) (noting that the UIM endorsement "was subject to the insuring agreements . . . of the policy" and declining coverage). See also Nationwide Mut. Ins. Co. v. Hill, 247 Va. 78, 83, 439 S.E.2d 335, 337-38 (1994) (finding an opposite result when there was no language in the policy restricting UIM coverage to a vehicle identified or described in the policy provisions).

Here, in the Schedule of Coverages, there is a symbol "2" next to UIM coverage indicating a limitation on coverage to "owned autos only." This specific language of the policy must govern over the more general language located in the UIM endorsement. Levine, 887 F.3d at 629-30; Cunningham, 294 Va. at 373 n. 9. A finding otherwise would render the symbol "2" in the Schedule of Coverages meaningless, which is a result the Court is to avoid when possible. Ward, 284 Va. at 554.

8

Defendant attempts to cast doubt on this conclusion by raising other language from the Schedule of Coverages, such as where it says "SEE ENDT" in the section discussing the limit for UIM coverage. Defendant attempts to say that this means that the language of the endorsement should trump the Schedule of Coverages. This suggested reading is also incorrect for two reasons: (1) the language referencing the UIM endorsement is merely directing the reader to find the limit of such coverage in the endorsement instead of spelling out all of the provisions in the Schedule of Coverages; and (2) the symbol "2" would still be rendered surplusage under Defendant's reading, which must be avoided.

In summary, there are no genuine issues of material fact as the parties only differ on the interpretation of the policy, which is a legal question. Musselman v. Glass Works, L.L.C., 260 Va. 342, 346, 533 S.E.2d 919, 921 (2000). After applying Virginia law to the analysis of the Zurich Policy and UM/UIM Endorsement, Defendant is not entitled to summary judgment as a matter of law. Plaintiff, however, is entitled to a judgment as a matter of law because the interpretation of the Zurich Policy which declines coverage ensures that specific provisions govern more general provisions and as few words of the policy are rendered meaningless as possible.

For the reasons mentioned, the Court finds that summary judgment in favor of Plaintiff is appropriate. Plaintiff's motion will be granted and Defendant's motion will be denied. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 15, 2019